May it please the Court, the case that's before you today primarily involves issues of plane construction. There's three basic areas that come up. First is in connection with the input means, which includes the automatic operation and the operating data. Second, in connection with the storing means. And third, in connection with the controlling means. In this particular situation, what the district court did when it addressed the input means, it basically said that he's going to give it the plane meaning. And he interprets it as any operation that occurs without human intervention. But then as the lower court proceeds, it proceeds to read in additional aspects into the automatic operation. We disagree with the district court's position, but also in claim two, it's internally inconsistent. Even in the structure, why it says it's anything that moves without human intervention, it requires in the input means that pan and tilt speeds be set. Then he goes on in the controlling means and... Can I ask you just, because there are a lot of moving parts here, so we're not going to have time to get to all of these plane constructions, I'm afraid. Three of them are sort of lumped together, right? The input, the operating data, and the automatic operation, right? Yes. Let's assume we take one of those and we agree with the district court. Do they all kind of live or die together, all those three terms? No, they do not. So the argument you're making now is separate and distinct. Let's assume we buy what the district court did on automatic operation and operating. If you accept what the district court did on automatic operation and operating data, yes. We've stipulated below, based on the court's construction, that the claims are invalid. If you accept the district court's position on storing means, then in connection with BOSH, we've stipulated... Right, but I want to know about the play of input. Yes. So that rises or falls with operating operation? On automatic operation and operating data. I'm sorry, yes. Let me take you to some of the arguments you make. I mean, one of the arguments you focus on, in your blue brief at least, is the disclaimer argument. You point to the prosecution history on re-exam, and you tell us you made this statement, and that's a clear disclaimer, and therefore we ought to go with that and rely on that for the claim construction. Am I correct in characterizing your argument? Excuse me, Your Honor. Yes, we do make this statement. However, that is really a secondary argument, and we submit that you really don't need to reach the issue of disclaimer. Based on the specification itself and the intrinsic... Yes, but let me just dispose of it quickly then. You agree, do you not, that we're not going to apply disclaimer in this instance on the re-exam if it expires? Perhaps there is an intervening right at issue. That's right. We don't disagree with you, Your Honor. Okay. Our position on the input needs an automatic operation operating data. This is when you look at the specification, such as in Column 5, when you point out several places in Column 3, it's very clear that the automatic operation is the continuous reciprocating movement between pre-set positions and then a stopping interval, a set stopping interval at each of those positions, and that the other operation takes it out of automatic operation. The home positions, in fact, since dramatic in its brief on Page 3, indicates and admits that the home positions moving into that requires a human intervention, a manual activity, and hence would not be automatic operation. So that's not a problem with claim construction, right? The district court's claim construction doesn't allow for manual operations, right? Well, the problem is that when you look at the controlling means, which is controlling for automatic operation, yes, it does because it says one of the things that it controls is to move to home positions when you press a button. So the claim construction in and of itself on Claim 2 is internally inconsistent between the input means and the controlling means because the controlling means requires the home positions. And, in fact, what the district court was doing was reading in from Claim 3 what Claim 3 says further controlling and a second set of input means. So, yes, the district court is reading that in. In fact, the only operation the district court leaves out is the reciprocating movement between preset positions with a stopping interval. It requires many other things to be present in the system, but leaves out the one thing that we say is the automatic operation and that we submit the specification makes very clear is automatic operation. So you argue that the correct construction is the automatic movement of the camera between defined locations. Isn't your use of the word the automatic movement within your own construction, doesn't that kind of contains a term within your definition? We would submit that, and we did use the term automatic movement, it's the continuous movement between preset positions. And the two things that the Board of Appeals indicated that you need to enter is the preset positions and the stopping interval. Stopping interval is part of... So you're looking at the movement, not necessarily where it moves to and from. That is correct. The movement that continues to occur unless and until it's interrupted. What makes that movement automatic is that you don't have human intervention. Well, according to the specification, and what happens in the specification, when you press button 14, which is labeled auto, the one activity that occurs... Can you tell us what you're talking... Can you refer us to what you're speaking to in the system? Yes, please go ahead, Your Honor. It's in figure 3. If you look at figure 3 of the patent, you'll see a button called 14. This is on the appendix 104. And that button 14 says auto, and that's the only button or control that says auto. That's what puts it into auto operation. And when you read the specification in column 5, it makes it very clear that what's happening when you press that button is you have a continuous reciprocating movement between the preset positions. There's no human intervention with a stopping interval at each position, a set stopping interval. And that's what we submit is the automatic operation. It's not just anything without human intervention, but you need to go back to the intrinsic evidence. You need to look at the specification. What the lower court did is just said, well, I'm going to give it to plain meaning, but then decided it needed a definition. Can you tell me in English what the practical difference is between his definition and your definition? You said a few minutes ago, and I think that's your answer would be, it's that the home operation and the emergency stuff is not included in your definition and would be included in his? It would be included and mandatory in his. You mean so that when you're in the emergency signal stuff, that would be part of the automatic operation? Yes, when you look at the third element of the Claim 2, the controlling means, it's for controlling automatic operation. And the district court proceeds to say that includes going to the home positions and going to the emergency position. So the lower court is requiring those activities, which we submit are not even part of automatic operation, but are a part of discontinues the automatic operation. In fact, the home positions actually require manually pressing a button. So clearly, even underneath his definition, the lower court's definition, it wouldn't meet the definition of automatic operation. So let's assume that we agree with you in general and accept the constructions which would avoid invalidity. Does that also eliminate much of your infringement case? The impression is that you need the breadth that you've been arguing for initially or as the claims are written in order to have real substance for the infringement case. No, it does not eliminate our infringement case. The issue on the input means automatic operation and operating data is only an issue on the invalidity of the patent. It is not an issue on infringement. The only issue as far as infringement, based on the stipulation, is on the storing means and that's only in connection with BOSH, where that comes up as an issue. We would still have an infringement case against, even on the current definition of storing means, that the lower court has discovered infringement cases. You're telling us you don't need the additional breadth that the district court was not willing to accept? We don't need the district court's interpretation that it's anything without human intervention. Also, we believe that's inconsistent with both the rest of the claim and also what the district court is doing is in essence trying to read in the home positions and the emergency positions. But even if they were in the claims, we would still have an infringement case. But it shows the inconsistency in the lower court's interpretation. The automatic operation, if I can turn to the patent... Can I ask you something? I'm just going to clear on operating data. If you look at Appendix 81, 80 and 81, and this is the district court's revisiting of the claim construction after the BPAI, and he talks about operating data and he says that he distinguishes between what the BPAI said and what you are advocating. He says the BPAI did not conclude, however, that operating data consists entirely of position data and stopping interval data. So he was construing your position as being not that they have to be there with other stuff, but that that's the entirety of the data. Is he wrong about that? Because it seems to me your position before us is different. No, Your Honor. The position that we have is that what he said the board did is since it only listed two and it did not exclude others, there's no exclusionary language, that therefore the board did not fully address the issue. It's our position there's only two critical things that are needed for the automatic operation. They may be necessary, but is that your view that it consists entirely of just those two? Those are the only two that are necessary. Well, let me answer the same question. I guess we're going around in circles. Is it your position that it has to consist entirely of just these two things? No. It can include other things, such as pin and tilt speed. But the pin and tilt speed, when you look at column four, is at line 15. It says that's optional. So yes, you can have pin and tilt speed set, and that would still be part of the automatic operation. So it's not exclusive of others. Do you think the district court misconstrued what your position was? I'm not understanding this section of the district court. I think what the district court did is both misconstrued what our position was and also what the board's position was. The board interpreted this as it must have these elements. And the district court basically said, well, I could ignore that because it didn't exclude other elements. And therefore, they didn't fully consider the issues. Your Honor, unless there's more questions, I see I'm in my yellow light. You are in the rebuttal time. Is there a question you need to ask? Yes. One last question. Now, doesn't the automatic operation necessarily include, or can it include, both the home and emergency locations? It definitely would not include the home location because in order to go to a home location, even under the lower court's definition, I need to push a button to send it to the home position. Therefore, there needs to be a manual activity. And automatic admits that. Don't you designate what the home position is? Yes, we do designate what it is. But it doesn't move. Once you designate it, can't you program this to automatically move to that designation? Oh, yes. But then if it moves without saying move to the, in other words, the home positions can be the same positions as the preset positions for automatic operation. They can be the same position. But moving, say, if I said I want to move to the fifth home position, OK, I've got to press a button to go there. That's the only difference. They may be exactly the same location. But you're saying there's no dispute about that. You're saying that that's under the district court's definition. Everybody knows that. Everybody accepts that, right? So even if we agree with you that you have to press a button for the home position, it requires manual intervention, that would lead to a reversal of what the district court said, right? Well, what it shows is the inconsistency with what the district court is saying. Because it says automatic operation is something worth no human intervention. And yet, it reads in as a required element for the required operation for the automatic operation moving to the home positions, which clearly require a manual operation. It doesn't change our infringement position, but it shows the internal inconsistency. OK. We'll save your rebuttal time, Mr. Hunt. Thank you, Your Honor. Mr. Gallagher. May it please the court, Sean Gallagher for Censormatic with me. Representing Bosch is Jonathan Franklin. Mr. Franklin will address the soaring means argument that is of particular concern to his client on the non-infringement judgment. I, on behalf of Censormatic, will address the judgment of invalidity in the interpretation of input means for operating data for automatic operation, which is the crux of that issue. Can you clarify, I guess, some of the discussion that we were having with your friend? I'm sure. In terms of what your view is, what, if anything, does the district court's definition, construction of automatic operation, exclude? Does it exclude moving to home position manual, and therefore they would be excluded? I think that the district court's interpretation of automatic operation encompasses any operation without human intervention that would include the movement of a camera in response to an alarm, which the specification clearly describes as automatic in nature. It would also encompass movement to a home position after you've initiated the automatic operation by pressing a button. The way the patent describes movement to a home position, it's by contrast to moving a joystick. Once you press the button for that home position, the camera automatically moves to point at the home position.  but the movement is automatic. Just like you initiate the reciprocating motion to which they would limit the claims by pressing a button to initiate the system engaging in that operation. So our position is that the district court here assiduously followed this court's instructions on how to interpret claim language. The district court looked to the agreed ordinary meaning of automatic operation and operating data and declined to depart from that broad ordinary meaning because there is no reason in the specification or in the prosecution to do so. Let me ask you, can you turn to the specification column 7 and the discussion that goes on between lines 9 and 21? That deals with the emergency switch. So part of their argument and what they talk about in this disclaimer, which is now we agree not a disclaimer, but I think it has to do with this and the emergency switch, right? What is your interpretation of the district court's claim construction? Would it say that the emergency switch and all of this stuff, which the specification talks about the discontinuance of the automatic operation, is that inconsistent with what the district court found? I don't think it's inconsistent at all. What this section of the specification is talking about is one form of automatic operation, response to an alarm, potentially discontinuing another form of automatic operation. Both are automatic. But you might, with this disabling switch that the patent talks about, you might choose not to have the system allow interruption of one form of automatic operation with another. This language can only be reconciled looking at the claim language by interpreting it that way. The claims, you look at claim 2, the independent claim, the dependent claims, claim 3 and claim 4, include within them the same input means, the same storing means, and the same controlling means as claim 2. They refer to said input means, said controlling means, said storing means. It's clear from that that the operations in claims 3 and 4 are a subset of the broad automatic operation covered by claim 2. They are specific instances of automatic operation. That is the structure, for example, when you look at controlling means, a point Mr. Hoffman made in his argument. The controlling means is by definition means for controlling automatic operation of the camera. In claim 3 and claim 4, that very same controlling means, by definition, controlling means for controlling automatic operation, is what moves the camera to a home position in response to an alarm or after initiation by pressing a button to the home position. Can you set the camera to move to a home position in any one of the sequences? Let's say you set the camera to move to a particular corner of a parking lot back home, go to another corner of a parking lot back home. It's unclear whether the specification of this patent contemplates that level of complexity in the movement, but that would certainly be automatic operation as a district court interpreted the claim. I don't know if that answers your question, but I think that the patent doesn't get into a description of multiple, or in various places, it alludes to the possibility, but it doesn't describe that. It does. I'm looking at line 6 on A110, beginning at column 6 at 55. It says it's also possible to set the system beforehand to multiple mode automatic operations. It goes on talking about the long plurality of locations. It shows those locations on the monitor, and since the system need not operate, the remote control operator, thus the monitoring operation through a monitor screen can be performed more easily. Your Honor, I think you certainly could interpret that in the way you suggest, as contemplating multiple locations, which would be another form of automatic operation. I want to leave time for my colleague to argue their issues, so let me just close by saying the district court applied ordinary meaning, agreed ordinary meaning, of automatic operation and operating data, and under this Court's decisions, most recently Thorner, the Aventis case, there is a stringent standard for departing from that ordinary meaning that has not been met in this case. Before you sit down, I just want to make one comment, and you can respond. There's a portion of your brief which is not relevant to your argument, but where you're talking about the BPAI decision, and you characterize the decision, I think both you and your colleague do, as expressly, the reason we should discount the BPAI opinion is because it expressly sought to adopt an interpretation that would preserve the validity of the claim. I really, so you can tell me why I'm wrong, I really think that's a mischaracterization of what the BPAI did, because while they set forth initially that proposition from Papp's modern, or whatever that case is, they went on to talk about Phillips, and how Phillips says something else, and therefore they're going to apply to something else. So am I missing something, or is that really a mischaracterization? I think it was a fair characterization given the result the BPAI reached. The BPAI announces that it's going to follow the Papp's decision, and then goes on to talk about Phillips. But the result it reaches is to read in a limitation that is an attempt to preserve validity. That is the outcome of the decision. Well, you say it expressly sought to adopt it. It does talk about Papp's, but it concludes, however, we've got now Phillips, and it continues, it quotes Phillips, and it says, importantly, it is error to use the possible invalidity of those claims, if broadly construed, as a basis of construing them narrowly. How could that be clearer than being the correct standard, and a standard other than Papp's? Well, I think if the BPAI was not intending to read in a way that preserved validity, there would be no reason for it to even cite this principle from Papp's. So when I read this, I see the Board of Patent Appeals citing Papp's, and citing this language about reading claims and reexamining expired claims to preserve their validity. I can think of no reason to cite that other than some intention to apply it. And then you read the decision, Well, then they cite it for the purpose of shooting it down and saying, yeah, that's what we were required to follow, but sorry, we're not following that because they, because, and they say quite explicitly, because we're going to follow Phillips. And I would submit only that when the BPAI then attempts to apply Phillips, it misapplies the canons of claim construction and errors as a matter of law in its claim construction. Thank you. All right, thank you, Mr. Gallagher. Thank you. Mr. Franklin. Thank you, Your Honor. May it please the Court, Jonathan Franklin for Pelley-Bosch Security Systems. I will be addressing the district court's construction of the storing means, but since my colleague did not advance much of an argument on that point, I think I'd like to be brief. My first point would be the court does not even need to reach this issue if it affirms the judgment in validity since the patent would then be invalid. However, the construction of storing means is an alternative and independent basis for affirmance as to Bosch, because, like the lawyer has stipulated, that Bosch's products do not infringe under that construction. The construction, in our view, was correct. The principal issue that was raised was about the construction of random access memory. The court held, I think correctly, that that term is used in this patent is synonymous with the term RAM, as distinguished from ROM, because those terms were understood in 1988. And at page 45 of Lenkerler's brief, they concede that the district court was correct in referring to the equating random access memory with the term RAM in the specification. The specification also is very clear that RAM is different from ROM. And every expert in the case, microalarm's expert, defendant's expert, independent court-appointed expert in the Pelco case, all agreed that RAM, as distinguished from ROM, in 1988, the plain meaning of that term was a volatile memory, meaning one where the data was not stored, or did not continue when the power was discontinued. That's the NVRAM? Sorry? That was the NVRAM? NVRAM actually was not known in the art at that time, the Pelco expert. NVRAM would be non-volatile RAM. And what the court was saying in 1988, the plain and ordinary meaning of RAM was a volatile memory, which means that when you take the power away, the memory goes away. And I think that decision was eminently correct. And, in fact, was the plain meaning that all of the experts unanimously agreed. There's no dispute on that point. If the court does not have any further questions, I think that's... Okay. Thank you, Mr. Franklin. All right, Mr. Hoffman, you've got three minutes. Thank you, Your Honor. I'd like to address two points, both going back to the automatic operation and briefly also talking about the storing means. In the automatic operation, one of the things that Mr. Gallagher indicated is that the home positions are automatic operation. Reading from page 7 of Sensormatic's brief, it says, Thereafter, this home position can be recalled manually by the operator by pressing the corresponding home position button of the control panel. Even Sensormatic is agreeing in its brief contrary to today that that is manual operation, not automatic operation. But, more importantly, turning to the specifications of the patent. And when we look at the ordinary meaning, and I agree that Foner is a test, and you look at ordinary meaning, you've got to look at the specification of the patent, the entirety of the patent, and also the intrinsic evidence, the prosecution history, which would include that intrinsic evidence, the board's decision and analysis, as well as the examiner's comments. And at column 3, this is page, in the appendix 109, at the bottom of column 3, it says, A two-state switching program, switch 23B, is used to set to either automatic operation or to select any one of the home position settings. Clearly, the patent is saying home positions is something different. Also, when you look at column 5, down near the bottom, this is around... But can I just continue? Is this something different? Because column 4, what you cited, it continues on to column 4, and then the next paragraph, so is this something different? It talks about the interval scan, switch 24, having two dials, is used to set the time length of the stopping interval at each stopping position during automatic operation. Yes, that's all part of the automatic operation. In other words, as the board indicated, you need to set two things. One is the positions, and the second one is the stopping interval. What is being talked about at the top of column 4 is the stopping interval that you need to set. When you turn to column 5, at the bottom of column 5, this is around line 61, I believe it is, to about 65. In other words, when the auto switch 14 is pressed, the process of setting to automatic operation becomes complete, and as shown in figure 6, the CPU, the transmitting side, begins to perform automatic operation. Again, it's tying the automatic operation to pressing button 14, and above that, it talks about automatic reciprocating motion. When you're talking about pressing of buttons now, are you talking about initiating? Initiating, yes, Your Honor. It's initiating the operation. Then the courts say that automatic operation is something other than the initiation of the automatic operation? What the district court is saying is any operation that occurs with no human intervention, and if you say that also reads out initiating, then he's even reading out the automatic button 14 in that process, so that's what he's talking about. I'm not sure whether or not he's excluding initiating, but it shows part of the problem with the definition that he's using. In Column 5, it talks about the reciprocating motion between points as the automatic operation. Those are the points I want to make on that on the storing means, Your Honor, comments were made about distinguishing ROM from RAM. The issue here is what they're using in their system, Bosch is using in his system, isn't a ROM to store the data. It says storing means. It's got to be a read-write memory, and it also needs to be a memory that includes something that's a random access memory. The positions are randomly accessible. A ROM is not a read-write memory. Clearly, it does not include ROM, but what the district court did is it went on and said it also excludes EEPROM, and EEPROM, which are also read-write memories, and also randomly accessible memories, which is the equivalent of the RAM, or random accessible memory that's stated in the claim. The district court actually says that when talking about the re-exam, and Vicon's comments during the re-exam, says, well, Vicon wasn't admitting that these elements are part of the definition. They were only admitting, or stating that these were equivalents to the structure of the storing means. I need to interrupt you because we are over time. We'll do our best. Thank you very much. Thank you all for your arguments.